**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MELANIE E. DAMIAN, AS RECEIVER ) <br> OF TODAY'S GROWN CONSULTANT, ) <br> INC. (dba THE INCOME STORE), ) <br>     Plaintiff, ) <br>     v. ) <br> ) <br> MIKE ENGSTROM, ) <br>     Defendant. ) | No. 20-cv-7087 <br> Judge Ronald A. Guzman |

**DEFENDANT'S MOTION TO DISMISS**

Defendant, Mike Engstrom ("Engstrom"), by and through his counsel, the Law Office of Francis C. Lipuma and the Lyons Law Group, LLC, and pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, respectfully moves this Honorable Court to dismiss the Complaint ("Complaint") brought by Plaintiff, Melanie E. Damian, as Receiver ("Plaintiff") of Today's Growth Consultant, Inc. (d/b/a The Income Store) ("TGC"), and in support thereof, states as follows:

**Introduction and Procedural History**

On or about December 27, 2019, the U.S. Securities and Exchange Commission ("SEC") filed a Complaint in this District against TGC and its founder, Kenneth D. Courtright, III ("Courtright"). That case is pending before Judge Andrea R. Wood (19 CV 8454). The SEC's allegations charge Courtright with operating TGC as a Ponzi scheme. The U.S. Attorney's Office ("USAO") subsequently charged Courtright in a seven-count indictment alleging acts of wire fraud. Similar to the SEC's allegations, a federal grand jury charged Courtright with running a Ponzi scheme. The criminal case is pending before Judge Matthew F. Kennelly. (20 CR 77).

Plaintiff has filed the instant Complaint against Engstrom as an ancillary proceeding arising out of 19 CV 8454. The Complaint raises five counts against Engstrom, including alleged

1

violations of the Illinois Uniform Fraudulent Transfer Act (Counts I and II), Unjust Enrichment (Count III), Aiding and Abetting Fraud (Count IV), and Aiding and Abetting Breach of Fiduciary Duty (Count V). The allegations relate to Engstrom's former work as an independent sales contractor for TGC from 2009 to 2019.

TGC, through Courtright, entered into Consulting Performance Agreements with investors. Compl., ¶21. Investors provided an upfront fee to TGC and Courtright to be used exclusively for the purchase or creation, maintenance, and marketing of income-generating websites through online advertisements. *Id*. According to the Complaint, from at least 2017, the Consulting Performance Agreements guaranteed investors minimum monthly payments in perpetuity. *Id*.

In 2017 and 2018, Engstrom and his wife became TGC investors, who entered into Consulting Performance Agreements with Courtright investing over $178,000.00 combined (of which approximately $144,640.00 has been lost through Courtright's fraud). Compl., ¶9. On or about December 13, 2019, Courtright and TGC stopped making payments to all investors, including the Engstroms, and initiated a temporary moratorium on payments. Courtright also withheld two months of commissions that Engstrom earned totaling approximately $35,000.00.

While Engstrom provided sales services as an independent contractor to TGC, it is equally true that Engstrom and his wife were victims of Courtright's Ponzi scheme. While TGC at a later point in time held Engstrom out as a "General Manager" of sales, Engstrom had nothing to do with the operations side of TGC, and the Complaint does not allege one fact that would indicate he did. As the indictment reads in Courtright's criminal case: "Courtright caused others, including TGC salespeople, to make false statements to investors about the nature of an investment in TGC for the purposes of fraudulently obtaining more money to be used to make monthly payments due to other TGC investors." (ECF Doc. 30 at 3, 20 CR 77). Notably, the indictment raised no allegations

that Engstrom or any other TGC employee knowingly participated in Courtright's Ponzi scheme. All of these facts were known or available to Plaintiff at the time of filing the Complaint.

Notwithstanding, Plaintiff alleges that Engstrom received $2,432,488.91 in "fraudulent transfers of unjust enrichment" from January 21, 2010 to December 2, 2019 as a consequence of Courtright's scheme. Compl., ¶57. However, Plaintiff brings this action after having full access to TGC's records and business accounts and does so despite also alleging that Courtright's guaranteed rate of return scheme did not exist between 2010 and 2017; Plaintiff alleges that the scheme began in at least 2017. Compl., ¶21. Fraud must be pled with particularity and the facts inherently known to Plaintiff should be appropriately pled in this Complaint. This is especially true in this case, which is an ancillary proceeding arising from an action where Plaintiff has all of TGC's financials and records. For the reasons that follow, the Complaint should be dismissed.

## **Legal Standard**

A defendant may move to dismiss a cause of action under the Federal Rules of Civil Procedure if a plaintiff has failed to allege any set of facts upon which relief may be granted. *Gibson v. City of Chi.*, 910 F.2d 1510, 1521 (7th Cir. 1990). A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of a complaint, and is not intended to ask the Court to decide the merits of that complaint. *Id.* at 1520; Fed. R. Civ. P. 12(b)(6). At minimum, a complaint must contain sufficient factual matter to state a claim to relief that is plausible *on its face*. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But a claim that pleads factual content allowing the court to draw a reasonable inference that the defendant is liable for the misconduct alleged will have facial plausibility. *Id.*

When a plaintiff alleges fraud, however, the pleading must allege facts with particularity describing the fraud. Fed. R. Civ. P. 9(b). Such facts need to be able to state, at the very least, the "who, what, when, where, and how" of the alleged fraud. *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018). In other words, allegations of fraud in a complaint go beyond simple notice pleading, and demand a heightened standard requiring a plaintiff to provide a general outline of the fraudulent scheme; enough so the defendant is adequately on notice and aware of his alleged role. *U.S. Sec. and Exch. Comm'n v. Kameli*, 373 F.Supp.3d 1194, 1201 (N.D. Ill. 2019). Rule 9(b) serves three purposes: (1) to protect a defendant's reputation from harm; (2) to minimize complaints that are merely "fishing expeditions;" and, (3) to provide notice of the claim. *Id*.

## Argument

**A.      Count I – Violations of §5(a)(1) of the Illinois Uniform Fraudulent Transfer Act**

Plaintiff brings forth Count I under Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act (the "IUFTA"), otherwise known as "fraud in fact." 740 ILCS §160/5(a)(1). Because Count V of Plaintiff's Complaint is directed at Engstrom for "Aiding and Abetting" Courtright, Count I against Engstrom must be seeking to recover funds in Engstrom's possession that were provided to him by TGC.

The IUFTA protects against two types of fraud: (1) fraud in fact, or actual intent to defraud; and (2) fraud in law, or constructive fraud. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). Fraud in fact exists when a debtor acts with specific intent to hinder, delay, or defraud its creditors. *Cordes & Co., LLC v. Mitchell Cos., LLC*, 605 F.Supp.2d 1015, 1020 (N.D. Ill. 2009). Rule 9(b)'s heightened pleading standard applies to Section 5(a)(1) claims brought in federal court pursuant to the IUFTA. *DAN Joint Venture III, L.P. v. Touris*, 598 B.R. 430, 442 (N.D. Ill. 2019).

4

Fraudulent intent under Section 5(a)(1) may be inferred when certain factors exist. 740 ILCS 160/5(b). Otherwise known as "badges of fraud," a court considering an IUFTA claim for fraud in fact considers numerous factors when determining actual intent; none of which are apparent on the face of the Complaint against Engstrom. Engstrom was not an insider. Engstrom was not a debtor. These "badges of fraud" do not carry equal weight and there is no set number of the badges that needs to be present to demonstrate fraud. 598 B.R. 430 at 442. However, when multiple badges are present, there may be an inference or presumption of fraud. *Wachovia Secs, LLC v. Neuhauser*, 528 F.Supp.2d 834, 858 (N.D. Ill. 2007). An intent to defraud will be found if the circumstances indicate that the main or only purpose of the transfer was to prevent a lawful creditor from collecting a debt. *Centerpoint Energy Svcs., Inc. v. Halim*, 743 F.3d 503, 506 (7th Cir. 2014); 598 B.R. 430 at 442. Additionally, a transfer is not voidable under Section 5(a)(1) of the IUFTA against a person who took in good faith and for a reasonably equivalent value. 740 ILCS 160/9(a).

Count I not only fails to state a plausible claim for which relief may be granted, but it fails considerably at pleading any allegations of fraud with particularity as to Engstrom as required by Rule 9(b). In other words, there are no facts alleged that either give Engstrom the "who, what, when, where, why, and how," and an outline of the fraudulent scheme under IUFTA, or give rise to circumstances that indicate Courtright's main and only purpose of transferring money to Engstrom was to prevent lawful creditors from collecting their debts. As stated above, conclusory and threadbare allegations will not suffice when fraud is alleged. This is especially true where, as here, Plaintiff has all of the financial and business records showing TGC had paid commissions to salespeople such as Engstrom.

Here, the Complaint and Count I offer very little in terms of "badges of fraud" where an inference of fraudulent intent may be drawn. There are no allegations regarding Courtright retaining possession or control of the property after it was transferred to Engstrom. There are no allegations that before the transfers were made to Engstrom, Courtright had been sued or threatened with suit. There are no allegations that during each of the transfers to Engstrom, each such transfer (or all of the transfers) were substantially all of Courtright's or TGC's assets. There are no allegations that Courtright has absconded. There are no allegations that the transfers to Engstrom were concealed. There are no specific allegations that Courtright or TGC were insolvent, or became insolvent shortly after, the transfers to Engstrom. There are no specific allegations that any of the transfers to Engstrom occurred shortly before or shortly after any substantial debt was incurred by TGC or Courtright. There are no allegations that TGC or Courtright transferred TGC's essential assets to a lienor who transferred the assets to an insider.

What the Plaintiff does do is make general, conclusory statements regarding TGC and/or Courtright removing or concealing assets and Engstrom's status as an "insider." Compl., ¶¶8, 63. Regarding the removal or concealment of assets, Plaintiff alleges that "At the time that TGC made the Transfers, Courtright removed and/or concealed assets of TGC from the reach of its investors and/or creditors." Compl., ¶63. Plaintiff alleges transfers to Engstrom dating back to *January of 2010*. Compl. at Exh. A. Yet, there is absolutely no allegation pled in the Complaint that alleges fraudulent activity – let alone removal "and/or" concealment of TGC assets by Courtright – dating back to 2010. In fact, there are no allegations regarding action taken by Courtright or TGC for any year between 2010 and 2020 that would demonstrate removal or concealment of TGC assets. The Complaint does not even allege how Courtright or TGC removed or concealed assets, where they removed or concealed assets to, when the assets were allegedly removed or concealed, or when

6

those assets were in the "reach" of TGC's investors and/or creditors. This is especially concerning because the TGC Ponzi scheme was alleged as not having begun until 2017. Compl., ¶21. If Plaintiff's only "badge of fraud" alleged is a debtor removing or concealing assets, Count I is not pled with particularity as required by Rule 9(b).

Likewise, Plaintiff fails to plead with particularity that Engstrom is an "insider" and that a fraudulent transfer claim is plausible on its face because of that. Instead, Plaintiff makes the threadbare allegation that Engstrom was an insider pursuant to 740 ILCS 160/2(g). Compl., ¶11. Section 160/2(g) of the IUFTA lists how a person or corporation can be an insider. While the Complaint alleges Engstrom to be an "insider," it is not clear how he could be, when Engstrom is not related to Courtright, not an owner of TGC, and not even an employee of TGC. Plaintiff, in a Complaint alleging fraud, does not even plead which part of Section 160/2(g) it is relying on for its claim that Engstrom was an insider. In other parts of the Complaint, Plaintiff refers to Engstrom as both "the General Manager" and a salesperson. Compl., ¶¶8-10. Plaintiff describes Engstrom's role as "the General Manager," but, within that description, describes nothing that would indicate Engstrom managed any employees or other agents of TGC, or that he was the sole general manager of TGC. Compl., ¶8. Rather, Plaintiff's description of Engstrom's role as "the General Manager" appears to be nothing more than a description of Engstrom as a "salesperson." Despite Plaintiff's intimate knowledge of TGC through its position as Receiver, Plaintiff offers no specific facts to demonstrate that Engstrom himself drafted the lists that allegedly guaranteed returns, or that Engstrom had access to or knowledge of the balance of TGC's bank account, or access to or knowledge of the websites and how much money they were generating. Instead, Plaintiff simply alleges impermissible conclusions that Engstrom had "intimate knowledge of and involvement in

7

TGC operations," without giving any detail as to what his knowledge was, how he gained it or where he gained it from, or what his involvement was beyond sales and investment himself.

In addition to these sweeping claims that Engstrom was "the General Manager" of TGC and a salesperson – both of which Plaintiff alleges Engstrom received commissions for – Plaintiff also pleads that Engstrom was an *investor* of TGC. Compl., ¶9. In other words, Plaintiff generally calls Engstrom an insider, but then also refers to him as a salesperson (which implies Engstrom is either an employee or independent contractor of TGC thereby likely demonstrating that Engstrom received his "commissions" for reasonably equivalent value for his time spent working for TGC), and one of Courtright's victims.

Even construing the facts in a light most favorable to Plaintiff, there is simply not enough particularity in Count I. The Complaint does not allege when, if ever, Engstrom became "the General Manager" of TGC and what additional responsibility and authority that title bestowed upon him. *E.g.*, *A.G. Cullen Const., Inc. v. Burnham Partners, LLC*, 2015 IL App (1st) 122538, ¶32; 29 N.E.3d 579, 588 (Ill. 1st Dist. App. Ct. 2015). In *A.G. Cullen*, an Illinois Court found that a limited liability company that was one of the sole managers of another limited liability company that was charged with fraudulent transfers was a "managing agent" under Section 160/2(g) of the IUFTA, and therefore an insider. *Id*. In that case, the company was the managing agent and thus an insider because it held 90% of the interest in the debtor-company and was thereby "in control." *Id. See also*, *PharMerica Chicago, Inc. v. Meisels*, 772 F.Supp.2d 938, 944 (N.D. Ill. 2011) (where the owner and managing member of a limited liability company was deemed to be an insider of a fraudulent transfer). Without more detailed allegations to describe Engstrom's role as an "insider" under the IUFTA, Plaintiff cannot even meet one of the many badges of fraud that would support a claim of fraudulent transfers to Engstrom. Count I should be dismissed.

8

**B.** **Count II – Violations of §5(a)(2) of the Illinois Uniform Fraudulent Transfer Act**

Plaintiff brings forth Count II under Section 5(a)(2) of the IUFTA, otherwise known as "fraud in law." 740 ILCS §160/5(a)(2). Fraud in law, or constructive fraud, does not require proof of fraudulent intent. *Grochocinski v. Schlossberg*, 402 B.R. 825, 838 (N.D. Ill. 2009); *Zimmerman v. Paulsen*, 524 F.Supp.2d 1077, 1080 (N.D. Ill. 2007). Like Count I, the heightened pleading standard of Rule 9(b) applies to Section 5(a)(2) claims brought in federal court. *Gen. Elec. Capital Corp.* at 1079. Four elements must be present to bring forth a Section 5(a)(2) claim under IUFTA: (1) the debtor made a voluntary transfer; (2) at the time of the transfer, the debtor incurred obligations elsewhere; (3) the debtor made the transfer without receiving a reasonably equivalent value in exchange; and, (4) after the transfer the debtor failed to retain sufficient property to pay his indebtedness. 402 B.R. 825 at 838.

As in Count I, Plaintiff again relies on conclusory and threadbare allegations to plead fraud under Count II. For example, Plaintiff alleges that the transfers to Engstrom "were made without TGC receiving reasonably equivalent value in exchange for the Transfers or obligations incurred." Compl., ¶71. Paragraph 71 is literally the exact, word-for-word, language of the IUFTA, §5(a)(2). In other words, Plaintiff simply copied and pasted from the IUFTA. Again, Plaintiff alleges transfers dating back to January of 2010, but pleads no allegations of fact regarding how Courtright or TGC failed to retain sufficient property to pay their indebtedness *at that time*, or at any time thereafter and up until Courtright was caught. Plaintiff generally alleges that the "transfers occurred when TGC's remaining assets were unreasonably small in relation to the business transaction(s) * * *." Compl., ¶73. *See gen.*, *Deschepper v. Midwest Wine and Spirits, Inc.*, 84 F.Supp.3d 767, 783-84 (N.D. Ill. 2015) (generalized assertions of fraud under the IUFTA do not

9

place the court or defendant on notice of the alleged factual basis for the purported violations of IUFTA).

Without providing sufficient detail, or particularity, Plaintiff is attempting to lump nearly ten years of "Transfers" to Engstrom, implying that, during each of those ten years, TGC's assets were insufficient to pay its debt. However, Plaintiff also alleges that Engstrom was a salesman for TGC. Compl., ¶9. This begs the question of whether Plaintiff's fraudulent transfer claim is plausible on its face; when, as here, Engstrom is alleged to be an employee or independent contractor of the debtor, and also a victim of the debtor's scheme. According to the Complaint, TGC operated without a Ponzi scheme for approximately seven years, so it is more plausible than not, that the debtor was able to retain sufficient property to pay its debts otherwise Engstrom would (1) not have received commissions as alleged by Plaintiff for nearly ten years, and (2) not have become an investor/victim himself. On the same note, Plaintiff offers no allegations of particular fact that would demonstrate that Engstrom's commissions were unreasonable compared to the sales he was making, or that Engstrom's "other payments" (as alleged in Paragraph 10) were received without reasonably equivalent value based on his status as an investor. Count II should be dismissed for failure to state a claim for which relief may be granted.

**C.    Count III – Unjust Enrichment**

Plaintiff brings forth Count III on a state claim for unjust enrichment. Compl. at 17. To allege a claim for unjust enrichment, Plaintiff must allege that Engstrom has unjustly retained a benefit to Plaintiff's detriment and that Engstrom's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *Kopecky v. RJM Invs*, 2009 WL 2746151 at *3, 2008-cv-4921 (N.D. Ill. Aug. 26, 2009). A defendant's retention of a benefit will be considered unjust if any of the following conditions are met: (1) the benefit should have been

given to the plaintiff but was mistakenly given to the defendant; (2) the defendant procured the benefit through wrongful conduct; or (3) the plaintiff simply has a better claim to the benefit than the defendant. *Id.*

Here, Plaintiff alleged – again, in a conclusory style – that TGC conferred a benefit on Engstrom through the commissions and other payments, that Engstrom had knowledge of the benefit, and that it is unfair for Engstrom to retain the benefit because he knew or should have known of TGC's fraudulent scheme. Compl., ¶¶76-78. Plaintiff does not allege any actual wrongful conduct on the part of Engstrom that would give rise to Engstrom's retention of his commission payments and other payments as unjust. Plaintiff does not allege any facts that demonstrate she has a better claim than Engstrom. As Plaintiff pled, Engstrom was an investor himself, and therefore a victim of Courtright's fraud. With her intimate knowledge of TGC's records, it should be apparent to Plaintiff whether or not Engstrom has received all of his principal back from his investments or commissions for the services he provided. What Count III suggests is practically clawing back money from Engstrom for earned commissions, and, the incredible scenario then arises that any of these commissions would be put in the pot to essentially go back to Engstrom who, as an investor, should receive a return of his investment. The facts alleged here, and the facts that arise after Count III is examined in more detail, do not make a claim for unjust enrichment plausible, much less legally permissible, against Engstrom. Count III should be dismissed for failure to state a claim for which relief may be granted.

D.     **Count IV – Aiding and Abetting Fraud**

Plaintiff brings forth Count IV under an Illinois common law claim for aiding and abetting fraud committed by Courtright. Compl. at 18. As with Counts I and II, because Plaintiff's aiding and abetting claim is based on fraud, Plaintiff is required to plead allegations with particularity

under Rule 9(b) as to Engstrom. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). To state a claim for aiding and abetting fraud, a plaintiff must allege: (1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time he provides the assistance, and, (3) the defendant must knowingly and substantially assist the principal violation. *Gen. Star Nat'l Ins. Co. v. Adams Valuation Corp.*, 69 F.Supp.3d 742, 747 (N.D. Ill. 2014).

Here, Plaintiff combines the last two elements into one conclusory allegation that simply recites the elements: "Defendant was regularly aware of his role as part of the fraudulent scheme and Ponzi scheme at the time Defendant provided assistance to Courtright." Compl., ¶83. Nowhere in the Complaint does Plaintiff allege how Engstrom was *regularly* aware of his role in the fraudulent scheme. The Complaint alleges that Engstrom received commissions for nearly ten years, but there are no allegations that would demonstrate that for each or any of those ten years, Engstrom had regular, updated, and current knowledge of the scheme and his role in it. There are no specific allegations regarding how Engstrom's role as "the General Manager" involved business decisions, operational decisions, or access to the websites or TGC's bank accounts. There are no allegations regarding the lists regarding the guaranteed returns Engstrom provided to investors that would indicate Engstrom himself drafted them, or directed someone else to draft them based on his own intimate knowledge of the scheme. There are simply no particular allegations that support the second element of Count IV.

Likewise, there are also no specific allegations that support the third element of aiding and abetting fraud. Missing from the Complaint is what exactly Engstrom did to assist Courtright, when did Engstrom assist Courtright, where was Engstrom assisting Courtright, and what benefit

Engstrom received by assisting Courtright. There are no allegations that draw a direct and bold line between Engstrom and Courtright. Count IV should be dismissed.

E.        **Count V – Aiding and Abetting Breach of Fiduciary Duty**

Plaintiff brings forth Count V under an Illinois common law claim for aiding and abetting breach of fiduciary duty by Courtright. Compl. at 19. To plead a claim for aiding and abetting breach of fiduciary duty, Plaintiff must allege (1) Courtright was aided by Engstrom when he performed a wrongful act causing an injury; (2) Engstrom was aware of his role when he provided the assistance to Courtright; and (3) Engstrom knowingly and substantially assisted Courtright's violation. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). "Knowing and substantial assistance" attaches to a defendant when the defendant knows the other's conduct constitutes a breach of duty and there is substantial assistance or encouragement from the defendant to the wrongdoer so the wrongdoer can continue to breach that duty. *Premier Capital Mgmt., LLC v. Cohen*, 2008 WL 4378313 at *5, 02-cv-5368 (N.D. Ill. March 24, 2008).

Plaintiff's Complaint does not contain sufficient allegations to come close to pleading a claim for aiding and abetting breach of fiduciary duty against Engstrom. Plaintiff may have properly pled that Courtright performed a wrongful act that caused an injury. But, Engstrom was also an investor, and thereby a victim of Courtright's wrongful acts. Compl., ¶9. Plaintiff fails to plead any allegations that Engstrom aided Courtright in his wrongful acts, that Engstrom was aware of his role in the scheme, or that Engstrom knowingly and substantially assisted Courtright. Regarding the second element, Plaintiff pled one conclusory allegation that is nothing more than the element itself: "Defendant was regularly aware of his role as part of the fraudulent scheme and Ponzi scheme at the time Defendant provided assistance to Courtright." Compl., ¶89. This is simply not enough. The allegation that Engstrom was also an investor completely undercuts any

allegation that Engstrom was aware of a Ponzi scheme. The Complaint and the allegations in Count V offer nothing in terms of what Engstrom's regular awareness was or how he was aware that Courtright was operating a fraudulent scheme. There are no allegations that Engstrom was aware of TGC's downfall, Courtright's personal use of the investment funds, or TGC's loans. *See e.g.*, *Zachman v. Citibank, N.A.*, 183 F.Supp.3d 922, 924 (N.D. Ill. 2016) (granting a 12(b)(6) motion to dismiss an aiding and abetting breach of fiduciary duty claim when there are no allegations pled that the defendant had actual knowledge of the scheme or that it actively assisted in the scheme).

Like the allegation regarding the second element, the allegation regarding the final element (knowing and substantial assistance) also fails to properly inform Engstrom of the claim brought against him. Compl., ¶88. To support this element, Plaintiff alleges that Engstrom's knowing and substantial assistance involved his solicitation of investors, sales calls, explanation of the TGC business model, providing lists regarding returns on investments, negotiations of investor agreements, managing relationships with investors, and acting as a liaison between investors and Courtright. *Id.* The problem here is that Plaintiff's allegations assume that Engstrom was aware that every investment he solicited was made to further Courtright's scheme and that Engstrom knew for ten years that he was substantially assisting the scheme – despite Engstrom and his wife being investors. There are no allegations that Engstrom was directly involved, that he encouraged Courtright in perpetuating the scheme, or that Engstrom had access to any of the raw data or TGC account data. There are no allegations that Engstrom was on an executive level at TGC, that he was a trusted advisor of Courtright, or that he had any opinion or authority in day-to-day business operations. *See e.g.*, *Segerdahl Corp. v. Ferruzza*, 2018 WL 828062 at *5, 17-cv-3015 (N.D. Ill. Feb. 10, 2018) (aiding and abetting breach of fiduciary duty properly pled when allegations stated that defendant assisted the wrongdoer in removing a hard drive from a computer and copying

14

information from company accounts and sending to the wrongdoer); *Mintjal v. Prof'l Benefit Trust*, 146 F.Supp.3d 981, 997 (N.D. Ill. 2015) (defendants' ownership interests in companies provided, at the very least, constructive knowledge of wrongful transactions that supported aiding and abetting breach of fiduciary duty).

Count V alleges nothing more against Engstrom but a description of Engstrom's job duties as a salesperson for TGC. *See e.g.*, *Bank of America, N.A. v. Knight*, 875 F.Supp.2d 837, 849 (N.D. Ill. 2012) (defendants' motion to dismiss granted when allegations listed regarding knowing and substantial assistance were nothing more than examples of professional negligence). Plaintiff's own allegations make it implausible that Engstrom knowingly and substantially assisted Courtright where Plaintiff alleges that Engstrom was the liaison between investors and Courtright concerning investments. Compl., ¶88. If Engstrom had knowledge of the scheme, then Engstrom would have no need to connect investors to Courtright. This allegation alone supports a theory where Engstrom had no answers regarding specific questions by investors that only Courtright could answer. There are no allegations in this Complaint that plausibly suggest Engstrom was regularly aware of his role in the alleged aiding and abetting of breach of fiduciary duty, or that he knowingly and substantially assisted Courtright. Accordingly, Count V should be dismissed.

**WHEREFORE**, Defendant, Mike Engstrom, respectfully requests that this Honorable Court grant this Motion and enter an Order dismissing Plaintiff's Complaint.

Respectfully submitted,

/s/ Francis C. Lipuma     /s/ Kevin M. Lyons     /s/ Nicole M. Anderson
Francis C. Lipuma     Kevin M. Lyons     Nicole M. Anderson

Francis C. Lipuma     Kevin M. Lyons – kevinl@kllawfirm.com
105 West Adams Street, 35th Floor     Nicole Anderson – nicole@kllawfirm.com
Chicago, Illinois 60603     5333 Main Street
(312) 675-0089     Downers Grove, Illinois 60515
franklipuma@gmail.com     (630) 852-2529