**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> TODAY'S GROWTH CONSULTANT, INC. : <br> (dba THE INCOME STORE) : <br> : <br> and : <br> : <br> KENNETH D. COURTRIGHT, III, : <br> : <br> Defendants. : <br> : | Civil Action No. 1:19-cv-08454 |

| | |
|---|---|
| MELANIE E. DAMIAN, AS RECEIVER OF <br> TODAY'S GROWTH CONSULTANT, INC. <br><br> (dba THE INCOME STORE), <br><br> Plaintiff, <br> v. <br><br> MIKE ENGSTROM, <br><br> Defendant. <br> _____/ | ANCILLARY CASE NO. <br> 20-cv-7087 <br> Hon. Ronald A Guzman <br> Hon. Sunil R. Harjani |

**RECEIVER'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS [ECF NO. 17]**

Melanie E. Damian, in her capacity as the Receiver (the "Receiver") for Today's Growth Consultant, Inc. (dba "The Income Store") hereby files her Response in Opposition to Defendant, Mike Engstrom's Motion to Dismiss [ECF No. 17] ("Motion") and states:

I.  **INTRODUCTION**

Defendant's Motion misapplies the law, overlooks and misrepresents allegations of the Complaint, attempts to raise factual inquiries and determinations as to whether the Receiver will prevail in her claims and is otherwise wholly without merit. As such, Defendant's Motion should be denied.[1]

The Securities and Exchange Commission ("SEC") brought an enforcement action for violations of securities laws against Kenneth D. Courtright III ("Courtright") and Today's Growth Consultant, Inc. (d/b/a The Income Store) ("TGC"). The Receiver filed this action as an ancillary proceeding to the underlying SEC enforcement action asserting fraudulent transfer under the Illinois Uniform Fraudulent Transfer Act ("IUFTA") and unjust enrichment claims (in the alternative), on behalf of the receivership estate of Today's Growth Consultant, Inc. (d/b/a The Income Store) (the "TGC Estate"), against the Defendant Michael Engstrom. Thereafter, Defendant filed a Motion to Dismiss Complaint (the "Motion") [ECF No. 17].

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is to accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor. *See Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 969 (7th Cir. 2015). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him to relief." *Cox v. Grube (In re Grube)*, 500 B.R. 764, 770, 2013 Bankr. LEXIS 358, *11, 2013 WL 343459. And it is well settled that it is

---

[1] Should the Court disagree, the Receiver respectfully requests leave to amend the Complaint to address any pleading deficiencies.

2

improper for a court to decide a question of fact on a motion to dismiss for failure to state a claim. *See Dow v. Shoe Corp.*, 276 F.2d 165, 167 (7th Cir. 1960).

The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984). Moreover, a plaintiff "need not anticipate and overcome affirmative defenses" in a complaint. *See Amin Ibarra Equity Corp v. Vill. of Oak Lawn*, 860 F. 3d 489, 492 (7th Cir. 2017).

## II. ARGUMENT

### A. The Receiver Sufficiently Pled a Claim for Violation of Section 740 ILCS §160/5(a)(1) of the IUFTA (Count I)

The Receiver properly pled a claim against Defendant for the recovery of transfers under Section 740 ILCS §160/5(a)(1) of IUFTA. A cause of action under section 5(a)(1) of the IUFTA seeks to recover transfers made by a person or entity with actual intent to hinder, delay or defraud its creditors. Defendant argues that (1) the Complaint does not contain "allegations of fraud with particularity as to Engstrom"; and (2) the Complaint "offer[s] very little in terms of 'badges of fraud' where an inference of fraudulent intent may be drawn" and the Complaint makes conclusory statements concerning "TGC and/or Courtright removing or concealing assets and Engstrom's status as an 'insider.' *See* Motion at pp. 5-6. Defendant's arguments misapply the law, overlook allegations in the Complaint, and are otherwise without merit. As such, Defendant's Motion should be denied.

Defendant's argument that the Complaint fails to allege fraud with particularity as to Engstrom misapplies Illinois law concerning fraudulent transfers. It is not the fraud of Mr. Engstrom, but rather the fraud of the transferor that is at issue. *See* 740 ILCS §160/5(a)(1) *and D.A.N. Joint Venture III, L.P. v. Touris*, 598 B.R. 430, 441 (N.D. Ill. 2019). The Complaint

3

alleges the relevant fraud as to the transferor with particularity. Indeed, the Complaint sets forth thirteen paragraphs detailing the fraud of TGC in a section titled "The TGC Fraudulent Scheme." *See* Complaint at ¶¶ 21-34. Further allegations concerning the District Court's preliminary findings of fraud against TGC and the insolvency of TGC are also set forth. *See* Complaint at ¶¶ 35-39. As such, Defendant's argument fails.

Defendant's argument that the Complaint "offer[s] very little in terms of 'badges of fraud' where an inference of fraudulent intent may be drawn" also misses the mark. As a preliminary matter, an *inference* of fraudulent intent is not required. Proof of a Ponzi scheme is sufficient to establish fraudulent intent. *See Grede v. Bank of N.Y. Mellon*, 441 B.R. 864, 881 (N.D. Ill. 2010) (*citing Plotkin v. Pomona Valley Imps., Inc. (In re Cohen)*, 199 B.R. 709, 717 (9th Cir. 1996)) *rev'd In re Sentinel Mgmt. Group, Inc.*, 728 F.3d 660, 668 (7th Cir. 2013) (reversing portion of *Grede* that did not find fraudulent intent). Here, the Complaint alleges a Ponzi scheme existed at the time of the transfers to Defendant, identified in the Complaint as the 513 transfers of funds made from TGC to Defendant from January 21, 2010 to December 2, 2019 totaling $2,432,488.91 (collectively, the "Transfers"). *See* Complaint at ¶¶ 40, 44, 56, 61, 62. As such, a "badges of fraud" analysis, which is undertaken to determine whether a transfer is made with actual intent, is not necessary here. Nevertheless, the Complaint also alleges with particularity "badges of fraud," including that Defendant was an insider and that TGC was insolvent at the time of the Transfers. *See* Complaint at ¶¶ 8-11, 58 and 45, respectively.

As set forth above, Plaintiff has sufficiently pled a claim against Mr. Engstrom to recover fraudulent transfers under Section 740 ILCS §160/5(a)(1) of IUFTA. As such, Defendant's Motion to dismiss Count I of the Complaint should be denied.

### B. The Receiver Sufficiently Pled a Claim for Violation of Section 740 ILCS §160/5(a)(2) of the IUFTA (Count II)

The allegations in the Complaint concerning constructive fraudulent transfers are well within the pleading requirements and, thus, Plaintiff should be permitted to pursue those claims. Defendant's argument to the contrary – that Plaintiff "relies on conclusory and threadbare allegations to plead fraud" – is legally without merit and belied by the Complaint itself. *See* Complaint at ¶¶ 68-74.

Constructive fraud under section 5(a)(2) "does not require evidence of actual intent to defraud nor a specific misrepresentation by the defendant." *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078-79 (7th Cir. 1997). The statute establishes a presumption of constructive fraud where "(1) the debtor made a voluntary transfer; (2) at the time of the transfer, the debtor had incurred obligations elsewhere; (3) the debtors made the transfer without receiving reasonably equivalent value in exchange for the transfer; and (4) after the transfer, the debtor failed to retain sufficient property to pay the indebtedness."

Consistent with the pleading requirements, the Complaint alleges:

- That from January 21, 2010 to December 2, 2019, TGC made 513 transfers of funds to Defendant totaling $2,432,488.91. *See* Complaint at ¶ 40.

- That at the time of the Transfers, TGC intended to incur or believed, or reasonably should have believed that TGC would incur debts beyond its ability to pay as they became due. *See* Complaint at ¶ 73.

- That the Transfers to Defendant were made without TGC receiving reasonably equivalent value in exchange for the transfers or obligations incurred. *See* Complaint at ¶ 71.

- That any services Defendant may have provided to TGC in his role as General Manager only facilitated and perpetuated the fraud, and thus was not reasonably equivalent value but rather increased the damages suffered by TGC by increasing the amounts owed to investors and creditors. *See* Complaint at ¶ 72.

- That the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities. *See* Complaint at ¶ 74.

Defendant argues that the Complaint is deficient because the Receiver alleged that "the scheme began in at least 2017" but the Receiver seeks to recover transfers TGC made to Defendant dated back to 2010. *See* Motion at pp. 3 and 9. Defendant, once again, overlooks allegations in the Complaint and misapplies the law.

The Receiver alleges that "at all material times, Defendant received the Transfers [from January 21, 2010 to December 2, 2019] from TGC as an insider who knew or should have known that TGC was being operated as a Ponzi scheme…" and that "[w]hen TGC made the Transfers to Defendant, TGC intended to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay them as they became due." *See* Complaint at ¶ 44-45; *see also* Complaint at ¶40. The reference to "from at least 2017" in paragraph 21 of the Complaint references the amount of funds TGC collected during that period of time. Contrary to Defendant's assertions in his Motion, the Complaint does **not** allege that "Courtright's guaranteed rate of return scheme did not exist between 2010 and 2017." *See* Motion at p. 3. Though the Receiver sufficiently meets the pleading requirements of Rule 9(b), "where the fraudulent scheme occurred over a period of time, the requirements of Rule 9(b) may be less stringently applied." *See SEC v. Benger*, 697 F. Supp. 2d 932, 937-38 (N.D. Ill. 2010). As such, Defendant's argument fails.

Defendant also argues that the fraudulent transfer claim is not "plausible on its face; when, as here, Engstrom is alleged to be an employee or independent contractor of the debtor, and also a victim of the debtor's scheme." *See* Motion at p. 10. Defendant's argument is without merit and misrepresents the allegations of the Complaint.

First, the Receiver does not allege that Mr. Engstrom is "an employee or independent contractor." Rather, the Receiver alleges:

> 8. Defendant acted as the General Manager of TGC, and in his role solicited investors by, *inter alia*, conducting sales calls with potential investors, explaining TGC's business model, providing lists that detailed the guaranteed returns that TGC offered for different investment amounts, negotiating and revising Consulting Performance Agreements, managing relationships with investors who raised concerns about their TGC investments, and otherwise acting as a liaison between investors and Courtright concerning the investments. In some cases, investors signed the Consulting Performance Agreements after speaking and emailing only with Defendant Mike Engstrom.

*See* Complaint at ¶ 8. Second, the Receiver does not allege that Mr. Engstrom was the "victim of the debtor's scheme." Rather, the Receiver alleges that "in addition to being the General Manager, Defendant was one of the top salespersons at TGC and also an investor through more than one company." *See id*. at ¶ 9. The Receiver makes no allegation that Defendant lost money on his investment or was otherwise a victim of the fraud. Regardless, even if the Receiver had alleged that Defendant was both an employee and a victim of TGC's fraudulent scheme, that would not preclude the Receiver from seeking to recover fraudulent transfers that Defendant had received from TGC as an employee and/or an investor. Indeed, investors who receive net gains from fraudulent and/or insolvent companies are subject to fraudulent transfer claims by the creditors or receivers of those companies.[2] *See* 740 ILCS §160; *see also Berman v. LaBonte*, 622 B.R. 503, 510 (D. Conn. 2020). As such, Defendant's argument as to plausibility is unavailing.

Defendant also argues that "Plaintiff offers no allegation of particular facts that would demonstrate that Engstrom's commissions were unreasonable compared to the sales he was

---

[2] If the extraneous fact, introduced by Defendant in his Motion, that Mr. Engstrom invested "over $178,000" were true, he still would be a "net winner" considering he received transfers in excess of $2.4 million from TGC.

7

making, or that Engstrom's commissions were received without reasonably equivalent value based on his status as an investor." *See* Motion at p. 10. Defendant's statements are mere denials, more appropriately raised as defenses, and do not constitute a legal basis for dismissing the Receiver's claim. *See Liebowitz v. Parkway Bank & Trust Co. (In re Image Worldwide)*, 139 F.3d 574, 578 (7th Cir. 1997) (whether "reasonably equivalent value" was received in a transaction is a question of fact). Moreover, Defendant overlooks the Receiver's allegations directly to the point.

Indeed, the Receiver properly alleges:

> Any services that Defendant may have provided to TGC in his role as General Manager only facilitated and perpetuated the fraud against existing investors and new investors. Thus, Defendant did not provide any reasonably equivalent value or any other benefit to TGC but rather increased the damages suffered by TGC by increasing the amounts owed to investors and creditors which will be reflected in any restitution that TGC will be required to pay.

*See* Complaint at ¶¶ 43 and 72. Notwithstanding the detailed allegations in paragraphs 43 and 72 of the Complaint, the Receiver is not required in the Complaint to anticipate or overcome affirmative defenses. *See Amin Ibarra Equity Corp v. Vill. of Oak Lawn*, 860 F. 3d 489, 492 (7th Cir. 2017). As such, Defendant's Motion to dismiss Count II of the Complaint should be denied.

### C. The Receiver Sufficiently Pled a Claim for Unjust Enrichment (Count III).

Defendant's arguments concerning the Receiver's claims for unjust enrichment also fail. Defendant asks the Court to dismiss the Receiver's claim for unjust enrichment essentially because (1) he claims to have earned his commissions, and (2) he claims he was a victim of Courtright's fraud. Neither of those arguments have any bearing on whether the Receiver sufficiently pled the claim. *See supra* Section B at p. 7.

Whether Defendant "earned commissions" is a question of fact that cannot be resolved on a motion to dismiss. To that point, however, the Receiver does allege that any services Defendant may have provided to TGC only facilitated and perpetuated the fraud, thus increasing the damages suffered by TGC by increasing the amounts owned to investors and creditors. *See* Complaint at ¶¶ 43. Further, the Receiver alleges that Defendant knew or should have known of TGC's fraudulent scheme *as an insider* and further details Defendant's role at TGC. *See* Complaint at ¶¶ 78 and 8-11, respectively.

Defendant also raises his own assertion that Defendant was a victim of Courtright's fraud. As set forth above, the Receiver alleges that Defendant was an investor – not that Defendant was a victim. *See* Complaint at ¶ 9. Nevertheless, as with Plaintiff's fraudulent transfer claims, whether Defendant was a victim or received a return on his investment has no bearing on the sufficiency of Plaintiff's unjust enrichment claim or the Court's analysis of Defendant's Motion.

The Receiver properly alleged a claim against Defendant for unjust enrichment. Indeed, the Receiver alleges that Defendant unjustly retained a benefit to the detriment of the defrauded investors and creditors of the Receivership Estate (*see* Complaint at ¶¶ 76-78), and that equity dictates that Defendant should not retain the funds (*see* Complaint at ¶ 79). *See Kopecky v. RJM Invs.*, 2009 U.S. Dist. LEXIS 76009, 2009 WL 2746151 (N.D. Ill. 2009) (setting forth elements of unjust enrichment claim and finding that receiver [who included allegations substantially similar to those in Plaintiff's Complaint] sufficiently alleged claim for unjust enrichment).

As such, Defendant's Motion to dismiss Count III for failure to state a claim should be denied.

9

### D. The Receiver Sufficiently Pled a Claim for Aiding and Abetting Fraud (Count IV).

The Receiver sufficiently pled a claim against Defendant for aiding and abetting fraud. Under Illinois law, to establish a claim for aiding and abetting, a plaintiff must allege: "(1) the party whom the defendant aids performed a wrongful act causing an injury; (2) the defendant was aware of his role when he provided assistance; and (3) the defendant knowingly and substantially assisted the violation." *See Heffernan v. Bass* 467 F.3d 596 (7th Cir. 2006). With respect to the second element, "knowledge and other conditions of a person's mind can be alleged generally." *See D.A.N. Joint Venture III, L.P. v. Touris*, 598 B.R. 430, 447, 2019 U.S. Dist. LEXIS 44589, *29, 2019 WL 1254893 (N.D. Ill. 2019) (denying motion to dismiss aiding and abetting claim where plaintiff alleged generally that defendants "were aware of their roles" in the scheme). Here, Plaintiff makes all the requisite allegations. *See* Complaint at ¶¶ 85-90.

Defendant misrepresents that "Plaintiff combines the last two elements into one conclusory allegation that simply recites the elements: Defendant was regularly aware of his role as part of the fraudulent scheme and Ponzi scheme at the time Defendant provided assistance to Courtright." *See* Motion at p. 12. As a preliminary matter, such an allegation would be sufficient under Illinois law where allegations concerning knowledge may be alleged generally. Defendant, however, overlooked the paragraph immediately preceding that allegation which specifically identifies the assistance provided. Indeed, the Receiver alleges that: "In his role as General Manager of TGC, Defendant knowingly and substantially assisted Courtright in perpetuating the fraudulent scheme and Ponzi scheme by:

- soliciting investors to invest in a fraudulent/Ponzi scheme,
- conducting sales calls with potential investors,
- explaining TGC's business model,

10

- providing lists that detailed the guaranteed returns that TGC offered for different investment amounts,

- negotiating and revising Consulting Performance Agreements,

- managing relationships with investors who raised concerns about their TGC investments, and

- otherwise acting as a liaison between investors and Courtright concerning the investments.

*See* Complaint at ¶ 82. Whether Defendant denies these allegations is a separate matter but that "there are simply no particular allegations" to support the claim is simply false. *See* Motion at p. 12. As such, Defendant's Motion to dismiss Count IV should be denied.

### E. The Receiver Sufficiently Pled a Claim for Aiding and Abetting Breach of Fiduciary Duty (Count V)

The Receiver properly pled a claim for aiding and abetting breach of fiduciary duty against Defendant. Once again Defendant grossly misrepresents the plain allegations of the Complaint by asserting "Plaintiff fails to plead any allegations that Engstrom aided Courtright in his wrongful acts, that Engstrom was aware of his role in the scheme, or that Engstrom knowingly and substantially assisted Courtright." *See* Motion at p. 13. The Receiver alleges that "[i]n his role as General Manager, Defendant knowingly and substantially assisted Courtright in breaching his fiduciary duty to investors…." *See* Complaint at ¶ 88. The Receiver goes on to enumerate seven specific ways in which Defendant provided assistance to Courtright. *See id*; *see also* Section D, *supra*. The Receiver also alleges that "Defendant was regularly aware of his role as part of the fraudulent scheme and Ponzi scheme at the time Defendant provided assistance to Courtright." *See* Complaint at ¶ 89. And as set forth above, the knowledge element of an aiding and abetting claim may be alleged generally. *See D.A.N. Joint Venture III, L.P. v. Touris*, 598 B.R. at 447.

Defendant's attempts to inject factual matters or argue the merits of Plaintiff's allegations, as Defendant does throughout much of the Motion, are improper and should not be considered.

As such, Defendant's Motion to dismiss Count V should be denied.

### III. CONCLUSION

WHEREFORE, because Defendant's Motion is based on a series of arguments unsupported by applicable law and contrary to the plain allegations of the Complaint, the Receiver respectfully requests that the Court deny the Motion and grant such further relief as the Court deems just and proper.

Respectfully submitted,

/s/Allison J. Leonard
Allison J. Leonard
Florida Bar No. 87061
Email: aleonard@dvllp.com
Kenneth Dante Murena
Florida Bar No. 147486
Email: kmurena@dvllp.com
DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Tel: (305) 371-3960/Fax: (305) 371-3965
*Counsel for Melanie E. Damian,
Court-Appointed Receiver
(Admitted to practice in the
Northern District of Illinois)*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic transmission via this Court's CM/ECF filing system on April 28, 2021, on all counsel or parties who have appeared in the above-styled action.

/s/Allison J. Leonard
Allison J. Leonard