**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MELANIE E. DAMIAN, AS RECEIVER ) <br> OF TODAY'S GROWTH CONSULTANT, ) <br> INC. (dba THE INCOME STORE), ) <br>     Plaintiff, ) <br>     v. ) <br> ) <br> MIKE ENGSTROM, ) <br>     Defendant. ) | No. 20-cv-7087 <br> Judge Ronald A. Guzman |

**DEFENDANT'S REPLY TO RECEIVER'S RESPONSE**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant, Mike Engstrom ("Engstrom"), by and through his counsel, the Law Office of Francis C. Lipuma and the Lyons Law Group, LLC, replies to *Receiver's Response in Opposition to Defendant's Motion to Dismiss* (the "Response"), filed by Plaintiff, Melanie E. Damian, as Receiver ("Plaintiff") of Today's Growth Consultant, Inc. (d/b/a The Income Store) ("TGC"), and states as follows:

**Introduction**

The resounding and recurrent argument found in Plaintiff's Response to Engstrom's *Motion to Dismiss* (the "Motion") is that Plaintiff is only required to plead the bare minimum, or the federal standard of notice pleading. The problem with Plaintiff placing all its eggs in one basket is the Complaint is based on fraud and a fraudulent scheme. Every count Plaintiff brought against Engstrom was the direct result of Kenneth Courtright's ("Courtright") and TGC's alleged fraudulent scheme. Every allegation against Engstrom was regarding and related to Courtright's and TGC's fraud. This alone elevates the pleading requirements from what is normally required by the Federal Rules of Civil Procedure to the standard of specificity. Fed. R. Civ. P. 9(b). Because it is easier and faster to ignore Rule 9(b)'s pleading requirements, Engstrom is left with the

1

Complaint before him, which tells him quite a bit about Courtright's and TGC's fraud, but nothing much regarding Engstrom's fraud, or Engstrom's *substantial and knowing assistance* in that fraud. For the reasons already stated in the Motion and for the reasons stated herein, Engstrom respectfully requests that the Complaint be dismissed.

## Argument

**A.     Count I – Violations of §5(a)(1) of the Illinois Uniform Fraudulent Transfer Act**

In response to Engstrom's reasons that Count I was not pled with the required specificity, Plaintiff argues that its pleading should survive because all it had to plead was "proof of a Ponzi scheme." Response at 4. Additionally, Plaintiff argues that its Complaint should survive because it is not Engstrom's fraud, but rather the "transferor's" fraud that is at issue. Response at 3. Both arguments, however, completely miss the mark. Regardless of the fact by whom the fraud is alleged to be committed, it still must be pled with particularity. Regarding Plaintiff's latter argument, Engstrom did not only contend that fraud had to be pled as to him alone. Motion at 5. Rather, Engstrom insisted that the Complaint failed to follow the rules, because it did not lay out the fraudulent scheme or allege any facts to demonstrate that Courtright's or TGC's main and only purpose of "transferring" money to Engstrom for a period of nine (9) years was to prevent lawful creditors from collecting their debts. *Id*. Simply titling a section, "TGC Fraudulent Scheme," does not satisfy the burden in a pleading alleging fraud.

Plaintiff's former argument – that proof of a Ponzi scheme is sufficient to establish fraudulent intent – also fails at this stage. Response at 4. In support of its position that she did not have to plead allegations with particularity, Plaintiff relies on *Grede v. Bank of New York Mellon*, 441 B.R. 864 (N.D. Ill. 2010). The difference between the case before us and *Grede* is that *Grede* is a decision following summary judgment and trial. *Id.* at 868. The significance is that, at that

time, the parties in *Grede* had an opportunity to *prove* a Ponzi scheme. *Grede* does not stand for the proposition that, in a federal complaint alleging claims under the Illinois Uniform Fraudulent Transfers Act ("IUFTA"), it is sufficient to simply allege the existence of a Ponzi scheme – as Plaintiff would want this Court to assume by this citation. Response at 4. Indeed, the ancillary proceeding against TGC and Courtright itself has not even come close to proving up its claims of a Ponzi scheme or fraud.

Plaintiff's Response is just as confusing as the Complaint. Plaintiff states "Here, the Complaint alleges a Ponzi scheme existed at the time of the transfers to Defendant, identified in the Complaint as the 513 transfers of funds made from TGC to Defendant from January 21, 2010 to December 2, 2019 totaling $2,432,488.91." Response at 4. However, the Complaint alleges that from at least 2017 through 2019, TGC operated as a Ponzi scheme based on TGC's use of new investor funds to cover obligations to earlier investors. Complaint, ¶¶21-32. In other words, Plaintiff is not alleging that a Ponzi scheme existed between 2010 and 2017 which is years that it is alleging there were fraudulent transfers to Engstrom. Alleging there was a Ponzi scheme while also alleging that such scheme did not begin until at least 2017 is one of many problems with Plaintiff's Complaint. Hence the reason why pleading with particularity is so vital in a Complaint such as the one before us. It is simply not enough to say there was a Ponzi scheme.

Plaintiff's Response also considerably fails at responding to Engstrom's points regarding the badges of fraud. Motion at 6; Response at 4. Plaintiff argues that it pled "with particularity" that Engstrom was an insider and that TGC was insolvent at the time of the transfers. Response at 4. Reciting two of the factors that make up IUFTA's eleven badges of fraud can hardly be said to equate to pleading with particularity. How was Engstrom an "insider?" When did Engstrom become an "insider?" What specific function, role, or title made Engstrom an "insider?" The

3

Complaint does not come close to any allegations that would support this bald conclusion, and Plaintiff's Response is just as empty. The same conclusion applies to Plaintiff's assertion that it pled insolvency. Response at 4. The Complaint against Engstrom spans a period of nearly a decade. Whether the Complaint is alleging that TGC was insolvent in 2010 is unclear, i.e., in other words, the allegations are not pled with particularity. Like above, Plaintiff alleges that "as a result of operating a Ponzi scheme, TGC was insolvent." Complaint, ¶38. But the Ponzi scheme alleged in the Complaint began in at least 2017. Unless Plaintiff can plead allegations, *with particularity*, to show that TGC was insolvent between 2010 and 2017, Plaintiff's bold, but bald, conclusion that it met the pleading standard is worthless. Notably, Plaintiff completely avoids responding at all to Engstrom's contention that there are no facts pled with particularity regarding Courtright removing and/or concealing TGC assets from the reach of its investors. *See* Motion at 6. Count I should be dismissed.

**B.      Count II – Violations of §5(a)(2) of the Illinois Uniform Fraudulent Transfer Act**

Plaintiff's preliminary argument regarding the allegations as to Count II is that, because TGC's fraudulent scheme was alleged to exist over a period of time, Rule 9(b)'s requirements can be less stringently applied. Response at 6. While it may be true that Rule 9(b) can be less stringently applied in certain scenarios, that alone does not completely relax Plaintiff's obligation to plead a Complaint that is something more than notice pleading. Rule 9(b)'s requirements still exist for the allegations making up Count II, and at the very least, in full force for the period of time prior to when Plaintiff alleges the fraudulent scheme began (i.e. 2010-2017).

With that in mind, and turning to the Response, Plaintiff points to the allegations in the Complaint that support the hurdles of particularity and plausibility. Response at 5. It takes very little effort to see that all Plaintiff did was fill in the elements with Engstrom's and TGC's names.

4

The credibility of Count II is questioned and the particularity requirement is compromised by Plaintiff grouping nine years of transfers (for compensation on commissions) into the general conclusions that follow: *at the time of all of the transfers*, TGC should have believed it incurred debts elsewhere, TGC did not receive reasonably equivalent value in exchange for his commissions, and TGC failed to retain property to pay its debts. Response at 5. It is (1) implausible to read this Complaint that alleges a scheme beginning in at least 2017 and find that there were fraudulent transfers dating back to 2010; and (2) find that Section 5(a)(2) of IUFTA's elements are pled with particularity after each transfer, let alone after each year of transfers to Engstrom. The jump Plaintiff expects Engstrom and this Court to make is unreasonable and reliant on assumptions.

Plaintiff also misleads the Court by arguing that Engstrom is raising affirmative defenses and denials by raising the issue of reasonably equivalent value. Response at 8. One of the elements Plaintiff must plead and allege, with particularity, is whether the debtor made the transfer without receiving a reasonably equivalent value in exchange. *Grochocinski v. Schlossberg*, 402 B.R. 825, 838 (N.D. Ill. 2009). Engstrom's Motion demonstrates how Plaintiff's allegations do not plead this element with particularity, specifically pointing out to the Court the implausibility of the lack of value received by TGC for Engstrom's services. Pleading the actual element and then making a hypothetical argument about Engstrom is simply not enough under Rule 9(b). *See generally*, *Zimmerman v. Paulsen*, 524 F.Supp.2d 1077, 1080 (N.D. Ill. 2007) ("Merely reciting the elements of a cause of action is not sufficient.") *Also see*, *In re Jumer's Castle Lodge, Inc.*, 338 B.R. 344, 349 (C.D. Ill. 2006) (whether reasonably equivalent value has been given involves both questions of law and fact).

5

Turning back to plausibility, reciting the elements of a cause of action will not suffice. Plaintiff's ambiguous and non-specific allegations make Count II implausible and it should be dismissed.

**C.     Count III – Unjust Enrichment**

Like Counts I and II, Count III was also required to be pled with specificity under Rule 9(b). *See*, *PharMerica Chicago, Inc. v. Meisels*, 772 F.Supp.2d 938, 955-56 (N.D. Ill. 2011) (If an unjust enrichment claim sounds in fraud, or is premised upon a course of fraudulent conduct, then Rule 9(b)'s heightened pleading requirement must be met). To plead a cause of action of unjust enrichment, Plaintiff was required to plead (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law. *Id*. at 965. The Compliant does not plead specific allegations regarding the relationship between Engstrom's commissions payments and TGC's insolvency, justification regarding Engstrom's commissions, or that there is no remedy provided by law. Engstrom is not stating in the Motion that Count III should be dismissed solely because he earned his commissions and was a victim of the fraud. Rather, the Motion highlights how Plaintiff's intimate knowledge of TGC should have given the facts necessary to properly plead a claim for unjust enrichment against Engstrom; but, apparently from the face of the Complaint, that did not happen.

In the Motion, Engstrom cited to relevant authority regarding the makeup of an unjust enrichment claim. For example, Engstrom stated that the Complaint did not have specific facts to show that TGC had a better claim to the money transferred than Engstrom *despite* Engstrom's commissions that he earned as an independent contractor and returns on his investment that he received as an investor. Motion at 11. Plaintiff takes issue with Engstrom's references to his earned

6

commissions and status as an investor/victim; but it is precisely for those reasons that more specific allegations are required in a claim like this. Unjust enrichment is a claim of equity, and Plaintiff's willful avoidance of Engstrom's positions as an independent contractor and investor/victim are wholly related to a claim of equity.

Additionally, the caselaw cited by Plaintiff does not support the position Plaintiff takes, and supports why more specific allegations are necessary given the facts as they apply to Engstrom. Response at 9. In *Kopecky*, the complaint alleged that certain individual defendants created a shell company for purposes of accepting one transfer from the company operating as a Ponzi scheme. *Kopecky v. RJM Investments*, 2009 WL 2746151, No. 08-c-4921, *1 (N.D. Ill. Aug. 26, 2009). That shell company accepted one transfer from the Ponzi scheme company and then in turn created a new company that invested the money. *Id*. at *1, *3. The complaint in *Kopecky* did not allege the transferees were investors or employees of the Ponzi scheme company, only that they received the money from the fraudulent scheme without giving valid consideration. *Id*. at *3. *Kopecky* clearly alleged sufficient allegations to support a claim for unjust enrichment. However, the allegations pled by the Receiver in *Kopecky* differ immensely from the allegations pled by Plaintiff here. Here, Plaintiff's allegations are intentionally drafted vaguely (Engstrom was an investor, and therefore a victim) and with prejudice (Engstrom commissions). Accordingly, Count III should be dismissed.

**D.      Count IV – Aiding and Abetting Fraud**

To plead a count of aiding and abetting fraud, Plaintiff was required to plead that Engstrom was regularly aware of his role as part of the overall or tortious activity at the time he provided the assistance. Motion at 12. Plaintiff's Response further demonstrates the inadequacy of Count IV as Plaintiff only focuses on Engstrom's "assistance," and completely avoids any mention or response

7

to where Engstrom's knowledge and awareness was pled in the Complaint. Response at 10. Instead, Plaintiff doubles down on its earlier assertions in the Response that justify this vague pleading by stating "'knowledge and other conditions of a person's mind can be alleged generally.'" *Id.* Plaintiff's reliance on "general pleading" comes from *DAN Joint Ventures III, L.P. v. Touris*, 598 B.R. 430 (N.D. Ill. 2019). Plaintiff fails to put the law into context in relation to the rest of the case. In *DAN*, throughout each of the several causes of action that were nearly identical to the current Complaint, the Court referred back to different allegations that *inferred* elements such as knowledge or intent. For example, in the Aiding and Abetting Fraud claim in *DAN*, after the Court stated that conditions of a person's mind can be alleged generally, the Court went on to state that the circumstances there permitted reasonable inferences as to state of mind. *DAN* at 447. The same is true throughout the rest of the *DAN* opinion.

The opinion in *DAN* does not stand for the proposition that intent, knowledge, and awareness can be pled without more specific allegations, as Plaintiff would want this Court to believe. *See also*, *Fintec Group, Inc. v. U.S. Bank, N.A.*, 2014 WL 4784141, 13-c-8076, *8 (N.D. Ill. Sept. 25, 2014) (When there were no facts pled regarding the defendant's actual knowledge in an aiding and abetting fraud claim, and no facts to infer actual knowledge, the plaintiff's aiding and abetting claim had to be dismissed). Engstrom's knowledge of Courtright's and TGC's fraudulent scheme are essential elements to Count IV, and, without those allegations pled with particularity as required under Rule 9(b), Engstrom is left to wonder what he is actually defending in Count IV.

After avoiding proper pleading as to awareness and knowledge, Plaintiff then argues that its allegations against Engstrom regarding assistance are sufficient. Response at 10. Plaintiff lists seven ways Engstrom assisted Courtright. Response at 10-11. However, there is nothing in this list

that describes how these alleged activities *assisted Courtright* in the fraud. More concerning is that the list fails at demonstrating any *substantial* assistance, as required to be pled in a claim for Aiding and Abetting Fraud. The list not only describes general job responsibilities typical of a salesman, but also actually pleads that Engstrom acted as a liaison between investors and Courtright. Response at 11. The latter implies that Engstrom sent investors to Courtright and that Engstrom was not acting as Courtright's sidekick. Without more specific allegations regarding Engstrom's knowledge and awareness, and substantial assistance, Count IV cannot stand; and, on its face, is implausible. Count IV should be dismissed.

**E.     Count V – Aiding and Abetting Breach of Fiduciary Duty**

Plaintiff makes similar arguments in support of Count V, i.e. it did not have to plead knowledge any more specific than "generally," and that it pled elements of Engstrom's knowing and substantial assistance in "seven specific ways." Response at 11. Under Count V, Plaintiff was required to plead facts to show that Engstrom knew that Courtright's or TGC's conduct constituted a breach of duty and gave substantial assistance and encouragement to Courtright or TGC in support of that breach. *Overwell Harvest Ltd. v. Widerhorn*, 2019 WL 398700, 17-c-6086, *6 (N.D. Ill. Jan. 31, 2019). Here, Plaintiff pled Engstrom's job description, i.e., Engstrom participated in sales calls with potential investors and introduced them to Courtright. There are no other allegations regarding Engstrom's assistance and encouragement to Courtright to further the breach of fiduciary duty. The Complaint does not allege Engstrom and Courtright discussed the fraudulent scheme and perfected it together. The Complaint does not allege that Engstrom knew Courtright was breaching his fiduciary duty to TGC's investors and promising returns on investments that he knew TGC would be unable to pay. The Response similarly fails at highlighting any such allegations.

Case: 1:20-cv-07087 Document #: 26 Filed: 05/12/21 Page 10 of 12 PageID #:114

Plaintiff's allegations largely mirror the allegations it made against other third parties it brought complaints against in this receivership. For example, in its complaint against William Courtright, TGC's Business Development Director, Plaintiff alleged that Mr. Courtright aiding and abetted Courtright in breaching his fiduciary duty by "being intimately involved in nearly every operation . . . including sales and solicitation of investors." *Melanie E. Damian, as Receiver of Today's Growth Consultant, Inc. v. William Courtright, et al.*, Case No. 2021-cv-1694, U.S. Dist. Ct., Northern District of Illinois. In the same complaint, Plaintiff alleged Mr. Courtright "explained TGC's business model and made commitments to potential investors concerning revenue…" Like the Complaint against Engstrom, Plaintiff's complaint against Mr. Courtright also does not allege any specific facts regarding Mr. Courtright's knowledge of the websites' revenue or TGC's debts or insolvency. Similarly, in its complaint against Ronald Fossum, Plaintiff alleged in an aiding and abetting breach of fiduciary duty count that Mr. Fossum "was involved in luring new investors to TGC. . ." *Melanie E. Damian, as Receiver of Today's Growth Consultant, Inc. v. Ronald A. Fossum, Jr.*, 2020-cv-1868-JCC, U.S. Dist. Ct., Western District of Washington. As with Engstrom and Mr. Courtright, the complaint against Mr. Fossum also contains no allegations that Mr. Fossum was aware of TGC's debts and insolvency, or the websites' lack of revenue.

What the complaints against Engstrom, Mr. Courtright, and Mr. Fossum all demonstrate is an effort by Plaintiff to take normal employment/independent contractor duties and make the conclusory leap that those duties qualify as knowing awareness and substantial assistance in a fraudulent scheme. There was hardly any effort here made by Plaintiff to actually investigate what Engstrom's thorough involvement in TGC was, which is made evident by the copied and pasted complaints shared between each of the aforementioned defendants, as well as evident on the face

of this Complaint. Hence the reason Plaintiff takes such careful steps to avoid this Court from recognizing Engstrom as an independent contractor and a victim of the fraud.

Regardless of the aforementioned scant effort to investigate the facts of this Complaint before filing, Plaintiff's Response fails at highlighting how Engstrom's job description is connected to Engstrom's knowing and substantial assistance in Courtright's breach of fiduciary duty. By way of example, in *In re Concepts America, Inc.*, an aiding and abetting breach of fiduciary duty claim was properly pled when there were allegations that went "beyond a ministerial act." 2018 WL 1174900, 16-A-691, *11 (March 1, 2018). In *Concepts*, the bankruptcy trustee pled that the defendant gave explanations to the wrongdoer as to why certain transactions were fraudulent transfers, drafted a memorandum with a "transparently pretextual rationale" for such transactions, and received $400,000 more than it otherwise would have received. *Id*. The allegations in *Concepts* support the plausibility of an aiding and abetting breach of fiduciary duty claim. There are detailed examples surrounding specific actions the defendant took that assisted in the breach and allowed the trustee to come to the rationale conclusion that there was likely knowing and substantial assistance given by the defendant to the wrongdoer.

By contrast, the Complaint against Engstrom does very little to show a bridge between Courtright's control of TGC and breach of fiduciary duty, on the one hand, and Engstrom's knowing and substantial assistance, on the other hand. There are no allegations that Courtright and Engstrom exchanged communications regarding the fraudulent scheme. There are no allegations that Engstrom received any money from TGC beyond what he was contractually due by TGC. There are no allegations demonstrating Engstrom providing advice to Courtright or encouragement to keep the fraudulent scheme going. There are no allegations that Engstrom was aware of TGC's debts or the lack of revenue from the websites. Additionally, Plaintiff is required to plead facts that

11

demonstrate Engstrom was aware of his role in the breach of fiduciary duty by Courtright *at the time he provided that assistance*. *In re Sellers' Housing Service, Inc.*, 514 B.R. 258, 278 (N.D. Ill. 2014) (emphasis added). This important factor is also notably absent from Plaintiff's Response. The Complaint alleges fraudulent transfers dating back to 2010. Yet there are no allegations whatsoever regarding Engstrom's alleged aiding and abetting dating back to 2010. This is significant and its gloss over in both the Complaint and the Response should be noted. Had Plaintiff pled more beyond Engstrom's job description, a motion to dismiss would not have been necessary. Without more, however, Count V fails to state a claim that is plausible on its face and therefore, it should be dismissed.

**WHEREFORE**, Defendant, Mike Engstrom, respectfully requests that this Honorable Court grant this Motion and enter an Order dismissing Plaintiff's Complaint.

Respectfully submitted,

| /s/ Francis C. Lipuma | /s/ Kevin M. Lyons | /s/ Nicole M. Anderson |
|---|---|---|
| Francis C. Lipuma | Kevin M. Lyons | Nicole M. Anderson |

Francis C. Lipuma
105 West Adams Street, 35th Floor
Chicago, Illinois 60603
(312) 675-0089
franklipuma@gmail.com

Kevin M. Lyons – kevinl@kllawfirm.com
Nicole Anderson – nicole@kllawfirm.com
5333 Main Street
Downers Grove, Illinois 60515
(630) 852-2529